IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KELLY TARBERT, | CV 19–149–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| ALEX AZAR, Secretary, U.S. Department of Health & Human Services, | |
| Defendant. | |

Four motions are pending before the Court: (1) Plaintiff Kelly Tarbert's first Motion for Summary Judgment (Doc. 9); Tarbert's second Motion for Summary Judgment (Unreasonable Delay) (Doc. 12); the Government's Motion to Strike Tarbert's affidavit submitted in support of her second Motion for Summary Judgment (Doc. 17); and the Government's Cross Motion for Summary Judgment (Doc. 19). For the reasons that follow, Tarbert's first Motion for Summary Judgment will be granted in part and denied in part, and her second motion will be denied. The Government's Cross Motion for Summary Judgment will be granted in part and denied in part. The Government's Motion to Strike will be granted.

**LEGAL FRAMEWORK**

When first enacted, Medicare was the primary payer of medical services for Medicare recipients, even when these same services were covered by other

1



insurers. *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995). Responding to "skyrocketing Medicare costs," Congress enacted the Medicare Secondary Payer ("MSP") statute in the 1980s, which positioned Medicare as the secondary payer to other forms of overlapping coverage. 42 U.S.C. § 1395y(b). Under the MSP statute, when a Medicare recipient suffers an injury covered by another policy, such as liability or automobile insurance or workers' compensation, Medicare will conditionally pay the Medicare recipient's medical expenses, but will seek reimbursement from any settlement the Medicare recipient later receives. *Id.* § 1395y(b)(2)(B).

Medicare asserts its right to recover by having a designated Medicare Secondary Payer Recovery Contractor ("MSPRC") make an initial determination of the conditional payment. 42 C.F.R. § 405.924(b)(14), (16). If the Medicare recipient disagrees with the initial determination, that recipient may file a timely request for reconsideration. *Id.* §§ 405.960–405.978. The reconsideration will be conducted by a Qualified Independent Contractor ("QIC"). *Id.* § 405.968(a). The QIC will consider evidence submitted by the Medicare recipient as well as information it gathers on its own. *Id.* The QIC will then issue a decision. *Id.*

If the Medicare recipient is unsatisfied, he or she may appeal to an Administrative Law Judge ("ALJ"), assuming the appeal is timely and meets the amount-in-controversy requirement. *Id.* § 405.1000–405.1063. The Centers for

2

Medicare and Medicaid Services ("CMS") or its contractor may participate by filing position papers or submitting testimony or evidence. *Id.* §§ 405.1000(c), 405.1012. After the ALJ issues its decision, an unsatisfied Medicare recipient may appeal the decision to the Medicare Appeals Council ("Council"). *Id.* § 405.1100–405.1130. The Council conducts a de novo review of the record developed during the proceedings before the ALJ. *Id.* §§ 405.1100, 405.1108, 405.1122(a). After the Council reviews the record, it either adopts, modifies, or reverses the ALJ's decision. *Id.* § 405.1130, 405.1136. The Council's decision is the final decision of the Secretary. *Id.* § 405.1130. From there, a Medicare recipient may seek review from a federal district court. 42 U.S.C. § 1395ff(b)(1)(A).

## BACKGROUND

In 1997, Tarbert moved from Arkansas to Libby, Montana, where she resided for the next decade. AR 30. During that time, Tarbert was exposed to asbestos dust from a local mining operation run by W.R. Grace. AR 348, 351. As a result of this exposure, Tarbert experienced respiratory problems. *See* AR 353. In 2011, Tarbert obtained a settlement of $51,908.00 from the State of Montana, Burlington Northern Santa Fe Railroad Company, and its insurer CNA for her injuries. AR 126, 351, 291. Between the time of exposure and settlement, Medicare made conditional payments for Tarbert's treatment. AR 126. In April 2012, pursuant to the MSP statute, CMS sent Tarbert a letter outlining $21,772.64

in potentially recoverable charges. AR 225–27. These charges—outlined in the Payment Summary Form, AR 228–239 ("April 2012 form")—were deemed recoverable because CMS construed them as related to Tarbert's asbestos exposure and therefore covered by her $51,908.00 settlement. *See* AR 225–27.

Through counsel, Tarbert responded to CMS on May 31, 2012. AR 204. She disputed the $21,772.64 figure and requested review of the charges. *Id.* Tarbert argued that CMS erred by: (1) including charges that pre-dated her 1997 move to Libby—meaning that these charges could not be related to her injuries; (2) including charges incurred after 1997 that were due to preexisting conditions and therefore unrelated to her injuries; and (3) including charges that post-date the settlement. AR 204.

In support of her request for review, Tarbert attached an affidavit verifying her April 1997 move to Libby, Montana. AR 220. She included an annotated copy of the April 2012 form, in which she circled the disputed charges and provided handwritten explanations for why certain charges were unrelated to her asbestos exposure. AR 208–19 ("Annotated Form"). She also attached a report prepared by a treating physician, Dr. Clyde Knecht, which provided an explanation for why, in his opinion, each disputed charge was unrelated to Tarbert's asbestos exposure. AR 221–22. In total, Tarbert disputed 90 charges placing $14,456.67 at

issue. *See* AR 208–19. She did not dispute all charges from 1997 to 2007 in the Annotated Form. *See id.*

On June 12, 2012, CMS wrote back. AR 193. It largely agreed with Tarbert and reduced the total figure to $7,763.12. AR 193–02. The new Payment Summary Form removed all but 10 of the disputed charges indicated on the Annotated Form. AR 193–94. Then, on July 5, 2012, CMS sent Tarbert a demand letter seeking $4,947.73 in reimbursement. AR 181–91. CMS supported this figure by reference to yet another Payment Summary Form ("July 2012 form") totaling $7,515.69 in conditional payments. AR 186–91. The July 2012 form further reduced the amount in dispute by removing 5 of the 10 remaining disputed charges from the June 2012 form.[1] AR 197–98 (removing various Medicare Provider charges, the 8/17/2001 charge of David L. Roth, and the 09/20/2002 charge of Stephen N. Becker). CMS further reduced the $7,515.69 figure in accordance with 42 C.F.R. § 411.37 to account for costs, such as attorney's fees, concluding that Tarbert owed $4,947.73. AR 182.

After receiving the demand letter, Tarbert requested further review. *See* AR 170. CMS wrote back on October 9, 2012, indicating that it was modifying its

---

[1] The July 2012 form retained the following five disputed charges: (1) 6/12/1999 conditional payment of $42.72 to Carlisle Regional Medical Center; (2) 8/10/1999 conditional payment of $29.85 to St. Edward Mercy Medical Center; (3) 6/12/1999 conditional payment of $72.58 to Donna Fehrenbach; (4) 8/10/1999 conditional payment of $8.26 to Dehland D. Burks; and (5) 8/10/1999 conditional payment of $54.62 to Andre J. Nolewajka. *Compare* AR 186–191 *with* 208–61 (*see* AR 186–87 for remaining disputed charges totaling $208.03).

5

April 5, 2012 determination and requesting a new balance of $4,388.45 plus interest. AR 170–71. In support of its calculation, CMS included a fourth Payment Summary Form ("October 2012 form") which reflected a total conditional payment of $6,666.11. AR 174–179. From the July 2012 form, the October 2012 form further reduced the total conditional payment figure but retained the five disputed charges. *See* supra n.1. On October 21, 2012, CMS wrote again to confirm a total payment owed of $4,388.45 plus interest. AR 166.

The following day, Tarbert filed a request for reconsideration with Maximus, the designated Qualified Independent Contractor ("QIC"). AR 131–64. Before Maximus, Tarbert argued for the first time that all charges for the 10 years immediately following her April 1997 date of exposure ("latency period charges") should be removed because "asbestos related disease has a typical latency period of 20 years, and in no event less than 10 years." AR 132. Accompanying her request, Tarbert submitted the affidavit attesting to her 1997 date of exposure and the same physician's report submitted to CMS.[2] AR 132. On February 11, 2013, Maximus issued an unfavorable decision, writing "the case file did not contain the amount of asbestos exposure listed in the documentation submitted or specific information regarding how the beneficiary was exposed to asbestos. Without this

---

[2] The physician's report references only the charges disputed on the Annotated Form which disputes only 10 of the 54 latency period charges. *See* AR 208–219. All but 5 of these charges were expunged on the October 2012 form. *See* AR 174–179.

6

information, the documentation did not support the time frame in which asbestos symptoms would occur." AR 125, 127.

On April 1, 2013, Tarbert requested review by an ALJ. AR 115. Accompanying her application, Tarbert again included her affidavit and the physician's report. AR 117. In all caps, Tarbert contended that "CHARGES THAT ARE CHALLENGED ARE CIRCLED ON THE ATTACHED DEMAND LETTER AND ARE ADDED FOR A TOTAL OF $1,782.31 ON THE LIST BELOW." *Id.* The "list below" is a strip of adding tape tallying 20 various charges without specifying to which form the charges refer. The demand letter indicated in Tarbert's request for review is not present in the Administrative Record.[3] The agency set a hearing for January 21, 2014. AR 108. Tarbert then submitted three scientific articles to support her claim that health consequences from asbestos exposure typically appear 10 to 20 years after the date of exposure. AR 90, 95. As a result of these new materials, the agency continued the hearing to April 29, 2014. AR 80.

At the hearing, Tarbert was represented by Allan McGarvey, who has been her attorney throughout the administrative proceeding and this case. AR 348. McGarvey explained to the ALJ that Tarbert was challenging charges included by

---

[3] By comparing the figures on the adding tape with the amounts listed on the October 2012 form, it becomes clear that this list corresponds to the 20 latency period charges that remained on the October 2012 form. *Compare* AR 117 *with* 174–179.

7

CMS that are unrelated to her Libby, Montana asbestos exposure. AR 348–49. He argued that this included any charge prior to her April 1997 arrival in Libby as well as any charge incurred during the ten-year latency period. AR 349. McGarvey directed the ALJ's attention to the scholarly articles, Tarbert's affidavit, and the physician's report. AR 349–50. McGarvey then asserted that if ALJ agreed with his position, it should reduce the total recoverable amount some "1700 odd dollars," consistent with the tallied number on the adding tape. AR 350. He clarified that the "challenged charges are the ones that are listed on that adding tape and are circled on the CPL." AR 353. The ALJ acknowledged that he was looking at two or three pages of circled items on a 12-page report.[4] AR 358.

The ALJ issued a "fully favorable" decision. AR 45–53. However, it did not include any findings or instructions for CMS to remove the lion's share of the latency period charges as listed on the adding tape. Instead, its decision instructed CMS to remove the charges disputed on the Annotated Form. *See* AR 52. In effect, this resulted in a reduction of only $208.03 instead of the $1,782.31 that

---

[4] It is not clear which documents the ALJ considered at the hearing. The Annotated Form was the only form in the record with circled charges at the time of the ALJ's hearing. *See* AR 208–219. Though Tarbert argues that the ALJ could not have considered this report because it was 15 pages long and the transcript references a 12-page report, this is not necessarily true. (Doc. 24 at 4.) The Annotated Form is actually 12 pages in length because it begins on page 4. Nevertheless, the disputed charges on the Annotated Form do not correspond with the charges listed on the adding tape.

Tarbert requested, as all but five of these charges were already removed on the October 2012 form.

Tarbert then appealed to the Medicare Appeals Council, claiming that the ALJ "overlooked a number of charges that are pre-2007." AR 15. To clarify which charges remained in dispute, Tarbert submitted an annotated copy of the 12-page July 2012 form with various charges between 1997 and 2007 circled as disputed ("Second Annotated Form"). AR 23–28. The disputed charges on the Second Annotated Form correspond to the numbers listed on the adding tape. *Compare id. with* AR 117. Tarbert claimed that this exhibit was "previously submitted and admitted at the ALJ hearing," AR 15, although the transcript of that hearing contains no discussion of admitting a new exhibit. Even though this exhibit was not present in the record at the time of the ALJ's hearing, the Council admitted it as MAC-1 at 1/9–1/12. AR 23–26.

The Council issued its decision on July 17, 2019, fully adopting the decision of the ALJ. AR 3–4. The Council adopted the ALJ's findings to exclude the five disputed charges (*see* supra n.5) and then determined that, "[i]n regards to the appellant's contention that the 'ALJ overlooked' certain charges, the appellant has not identified the specific claims remaining at issue." *Id.* It concluded that "[w]ithout knowing which claims remain at issue, we have no basis to review the

ALJ's decision or to determine whether the remaining claims are unrelated to the injury giving rise to the settlement." *Id.* This appeal followed.

## STANDARD OF REVIEW

This Court reviews the Secretary's factual findings for "substantial evidence." *Int'l Rehab. Scis. Inc. v. Sebelius*, 688 F.3d 994, 1000 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). "To determine whether substantial evidence supports the . . . decision, [courts] review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the [Secretary's] decision." *Sandgathe*, 108 F.3d at 980 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "Where the evidence is susceptible to more than one rational interpretation,' [courts] must uphold the [Secretary's] decision." *Id.*

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if it "can show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Generally, cases involving review of final agency decision do not involve fact-finding but only a deferential review of the administrative record. *Northwest Motorcycles*

*Ass'n v. U.S. Dep't of Agriculture*, 18 F.3d 1468, 1472 (9th Cir. 1994). Accordingly, summary judgment is the appropriate vehicle to resolve this case.

## DISCUSSION

### I. The Secretary's Decision

Tarbert argues that the Secretary's decision to deny her relief on appeal is "patently erroneous" because the Secretary falsely indicated that Tarbert failed to specifically identify the charges at issue. (Doc. 10 at 3.) Tarbert contends that the record clearly demonstrates that the charges at issue were the ones listed on the adding tape and circled on the Second Annotated Form. (*Id.*) The Government acknowledges that the ALJ determined that all pre-2007 charges "did not correlate to asbestos-related disease and therefore could not be recovered by Medicare under the MSP statute." (Doc. 20 at 8.) However, the Government contends that the Secretary properly upheld the ALJ's decision because the ALJ awarded precisely the relief Tarbert requested: removal of the circled charged on the Annotated Form. (Doc. 20 at 19 (citing AR 45–53).) The Government asserts that if there is error in the outcome, it is due to Tarbert and her counsel failing to direct the ALJ during the hearing. *Id.*

The Government correctly observes that the ALJ's "fully favorable" decision that, in reality, failed to grant Tarbert her desired relief is due to the confusing nature of her request. In support of her appeal to the ALJ, Tarbert

11

provided the Annotated Form and the physicians report, both of which primarily dispute charges that CMS had already removed from its October 2012 demand letter. This was never properly explained to the ALJ. Because only five charges referenced in the Annotated Form and physicians report remained at issue after CMS sent the October 2012 form, submitting these documents—documents which largely did not support her request to remove the latency period charges—confused the nature of her demand. Tarbert's addition of the disembodied charges on the adding tape lent no clarity to the situation. On appeal, Tarbert mischaracterizes the ALJ's deviation from her request to remove the latency period charges as a clerical error. AR 15, 5. The ALJ's otherwise careful decision does not reflect any proofreading or typographical errors. Rather, the ALJ's decision reflects its substantive confusion over Tarbert's request. At the hearing, Tarbert informed the ALJ that she was only challenging the circled charges. The ALJ granted relief by looking to the only place in the Administrative Record where charges were circled—the Annotated Form.

While the Government is correct that an agency must be permitted to rely on a plaintiff to accurately articulate her requested relief, *see Am. Oversight v. U.S. Dep't of Justice*, 401 F. Supp. 3d 16, 34–35 (D.D.C. 2019), the deficiencies present in Tarbert's application for review before the ALJ were resolved on appeal to the Council. When Tarbert included the Second Annotated Form in her request for

review, there should not have been any confusion as to which charges were in dispute. While the Council certainly could have refused to consider this new evidence presented on appeal and constricted its review to the materials present before the ALJ, *Ramirez-Alejandre v. Ashcroft*, 320 F.3d 858, 880 (9th Cir. 2003) (Trott, J., dissenting) (listing cases where appellate agency declined to consider new evidence on appeal), the Council did not indicate that it was doing so. By substantiating the charges listed on the adding tape, Tarbert expressed a cogent statement of the relief she requested. The Secretary's decision denying relief because Tarbert did not specifically articulate which charges were in dispute is not supported by substantial evidence.

The Government looks passed the Council's stated reason for its decision, and generally argues that Tarbert failed to adequately explain why she disputed some pre-2007 charges but not others and failed to provide a justification for excluding the latency period charges. (Doc. 20 at 19–20.) While Tarbert's appeal to the Council is not the model of clarity, the Council's de novo review of the record before it, 42 C.F.R. §§ 405.1100, 405.1108, 405.1122(a), conveyed all the information the Government claims is missing. The record provides justification for excluding the latency period charges, AR 86–01, and contains sufficient information to explain Tarbert's challenge to certain pre-2007 charges. Although the adding tape and Second Annotated Form appear to challenge only some of the

post-2007 charges, by comparing these disputed charges to the October 2012 form it becomes clear that Tarbert is challenging the latency period charges that remained as of October 2012. A review of the record as a whole compels the Court to conclude that the Council's decision to adopt the ALJ's findings in their entirety is not supported by substantial evidence. The Court will therefore remand to the Secretary with instructions to remove all latency period charges.[5]

## II.     Fees

Next, Tarbert requests attorney's fees under the Equal Access to Justice Act ("EAJA"). (Doc. 10 at 3.) Under the EAJA, a prevailing party may request attorney's fees unless the Government's position was substantially justified or other circumstances make the award of fees unjust. 28 U.S.C. § 2412(d)(1)(B). The EAJA provides specific guidelines for applicants requesting fees. Those applicants must show: (1) entitlement to fees, and (2) that "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." *Id.*

---

[5] Alternatively, Tarbert argues that she is entitled to relief on the merits because the Council's decision was unreasonably delayed. (Doc. 13 at 4.) Because the Court has determined that relief on the merits is warranted by other means, it need not reach this issue. Because the Court declines to reach the merits of that question, it need not consider the affidavit in support (Doc. 13-1) and will therefore grant the Government's motion to strike that exhibit.

Tarbert's request for fees is premature. Tarbert was not a prevailing party until this Order was issued. The Government cannot be expected to argue that fees are not appropriate because its position was "substantially justified" until the Government has a sense for how the Court views each parties case. Tarbert's request for fees will be denied without prejudice.

### III. Interest Penalty

Finally, Tarbert urges the Court to enter declaratory judgment ordering the Secretary to pay interest for the amount "erroneously collected under color of the Secondary Payer statute." (Doc. 13 at 2.) The Government contends that declaratory relief is not available for cases arising under the Medicare Act, and that the relief Tarbert requests would, if granted, violate separation of powers. (Doc. 20 at 25–26.)

The Medicare Act is the "sole avenue for judicial review for all 'claims arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 615 (1984). The Medicare Act authorizes a federal district court to consider final decisions of the Secretary under 42 U.S.C. § 405(g). Subsection (g) permits a reviewing court to "affirm[], modify[], or reverse[], the decision of the [Secretary], with or without remanding the cause for a rehearing." The statute does not mention an award of interest or elsewhere permit a court to craft alternative relief as it deems appropriate. The Court will not award any interest penalty.

IT IS ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 9) is GRANTED in part and DENIED in part. The Secretary's decision is REVERSED, and this matter is REMANDED to the Secretary to deduct $1,782.31 (the latency period charges as listed at AR 16, 23–28) from CMS's assessment of conditional payments. Tarbert's request for attorney's fees under the EAJA is DENIED without prejudice. IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (Unreasonable Delay) (Doc. 12) is DENIED.

IT IS FURTHER ORDERED that the Government's Cross Motion for Summary Judgment (Doc. 19) is GRANTED in part and DENIED in part. Tarbert is not entitled to attorney's fees under the EAJA and is not entitled to declaratory relief.

IT IS FURTHER ORDERED that the Government's Motion to Strike (Doc. 17) is GRANTED. The clerk is instructed to strike Tarbert's affidavits and exhibits at Doc. 13-1.

The Clerk of Court is directed, by separate document, to enter judgment of dismissal.

DATED this 9th day of March, 2020.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court